Cite as 2015 Ark. 163

# SUPREME COURT OF ARKANSAS

No. CR-15-35

| | |
|---|---|
| RAYMOND D. LEACH<br>APPELLANT | Opinion Delivered April 9, 2015 |
| V. | PRO SE MOTIONS FOR TRANSCRIPT AND FOR EXTENSION OF BRIEF TIME<br>[POLK COUNTY CIRCUIT COURT<br>[NO. 57CR-09-95] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE J.W. LOONEY, JUDGE |
| | APPEAL DISMISSED; MOTIONS MOOT. |

**PER CURIAM**

In 2011, appellant Raymond D. Leach was found guilty by a jury of capital murder and sentenced to life imprisonment without parole. This court affirmed. *Leach v. State*, 2012 Ark. 179, 402 S.W.3d 517.

Subsequently, appellant timely filed in the trial court a verified, pro se petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1 (2011). The trial court denied the petition, and appellant lodged an appeal from that order in this court. He now also seeks by pro se motions a copy of the transcript of his trial to prepare the appellant's brief for the appeal and an extension of time to file the brief. As it is clear from the record that appellant could not prevail if the appeal were permitted to go forward, we dismiss the appeal. The motions are moot. *See Winters v. State*, 2014 Ark. 399, 441 S.W.3d 22 (per curiam).

Appellant was found guilty of capital murder in the death of Christopher Casey who had been stabbed. At trial, Jack Shepard testified that when he left his home on July 17, 2009,

between 2:30 and 2:45 a.m., he saw owned by Tyler Prine blocking the road. He stopped and observed Prine and appellant, both of whom were drunk. Appellant, who appeared agitated and was walking in circles, said repeatedly that he had stabbed the victim because Prine had wanted him to do so and that he and Prine needed to take the truck and dispose of the body. Shepard returned to his home and called 911.

Prine testified at trial that he went to a party on July 16, 2009, where appellant was "pretty drunk." He testified that he, appellant, and the victim left the party. Later, as the victim was driving the three to Prine's house, appellant suddenly jumped on the victim and stabbed him. After appellant and Prine got out of the truck, appellant asked what he should do with the butterfly knife used in the stabbing, and Prine said to put in it the truck's tool box. When Prine asked appellant why he had stabbed the victim, appellant said that he thought Prine wanted him to do so. Prine denied that he had asked appellant to kill the victim. The authorities retrieved a butterfly knife from the tool box that was determined by forensic testing to be stained with the victim's blood. The victim's blood was also found on appellant's clothing.

There was also testimony that appellant said in an interview after his arrest that he had been drinking heavily and taking prescription drugs on the evening of July 16, 2009, had no memory of being in the truck with the victim and Prine, and did not remember stabbing the victim or killing anyone.

In his petition for Rule 37.1 relief, appellant alleged that he was under the influence of drugs and alcohol to the extent that he had no memory of what occurred; he was so incoherent

SLIP OPINION

that Prine could have convinced appellant that appellant had indeed stabbed the victim; he did not carry "that butterfly knife anywhere because it was so large and cumbersome"; Prine was the one who was angry at the victim; it was Prine who was driving, and the forensic evidence showed that it would have been practically impossible for appellant to inflict the wounds to the victim; Prine had the key to the tool box where the knife was found; Prine committed perjury concerning where certain pills were obtained; Prine may have given appellant the pills that impaired his thinking or maybe spiked his drink and then Prine killed the victim. Appellant further stated in the petition that, even if he did in fact kill the victim, he would not have done so if Prine had not supplied the drugs that affected him so adversely. He argued that, under the circumstances that suggest Prine was culpable, counsel was ineffective for not asking that the jury be instructed on accomplice liability. He also contended that counsel was ineffective for not making him aware of three plea bargains, one of which he would have accepted had he been made aware of it.

With respect to appellant's allegations in the petition concerning the sufficiency of the evidence to support the jury's finding that he was guilty of capital murder, challenges to the sufficiency of the evidence are not cognizable under Rule 37.1. *Anderson v. State*, 2015 Ark. 18, ___ S.W.3d ___ (per curiam). The claim amounts to a direct attack on the judgment. *Id.* As such, a challenge to whether the evidence was sufficient to sustain the judgment is a matter to be raised at trial and on the record on appeal. In appellant's case, the issue of the sufficiency of the evidence, including his alleged mental impairment, was raised at trial and addressed on appeal. Rule 37.1 affords the convicted defendant a means to mount only a *collateral* challenge

SLIP OPINION

to a judgment; it does not provide an opportunity to reassess the evidence supporting the judgment. *See Green v. State*, 2013 Ark. 455 (per curiam).

As to appellant's claims that his attorney was ineffective, this court has held that it will reverse the trial court's decision granting or denying postconviction relief only when that decision is clearly erroneous. *Conley v. State*, 2014 Ark. 172, 433 S.W.3d 234. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Sartin v. State*, 2012 Ark. 155, 400 S.W.3d 694.

When considering an appeal from a trial court's denial of a Rule 37.1 petition based on ineffective assistance of counsel, the sole question presented is whether, based on a totality of the evidence under the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), the trial court clearly erred in holding that counsel's performance was not ineffective. *Taylor v. State*, 2013 Ark. 146, 427 S.W.3d 29.

The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Pursuant to *Strickland*, we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007). Second, the petitioner must show that counsel's deficient performance so

SLIP OPINION

prejudiced petitioner's defense that he was deprived of a fair trial. *Holloway v. State*, 2013 Ark. 140, 426 S.W.3d 462. A petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. *Abernathy v. State*, 2012 Ark. 59, 386 S.W.3d 477 (per curiam). The petitioner must show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Breeden v. State*, 2014 Ark. 159 (per curiam). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

Appellant contended in a motion to amend the Rule 37.1 petition, which the trial court considered as an addition to the petition, that counsel failed to procure the attendance at trial of witnesses who were material to the defense and who could have testified to threats made by Tyler Prine against the victim and to threats made by Prine to the potential witnesses to prevent them from testifying. He further argued that, if the witnesses refused to testify, counsel could have obtained the statements of those witnesses and introduced them into evidence to establish that the victim feared Prine.

The allegation does not meet the standard under *Strickland* for establishing ineffective assistance of counsel because appellant did not demonstrate that there was a witness who could have provided admissible evidence that would have resulted in a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt such that the decision reached would have been different absent the errors. *See McNichols v. State*, 2014 Ark. 462, 448 S.W.3d 200 (per curiam). The allegation that counsel was ineffective

for failure to call and question a witness does not meet the *Strickland* standard without a showing by the petitioner that the witness would have presented admissible testimony or that the failure to call a particular witness denied him a fair trial under *Strickland*. *Id.*; *see Croy v. State*, 2011 Ark. 284, 383 S.W.3d 367 (per curiam) (holding it is incumbent on a defendant claiming ineffective assistance for failure to call a witness to show that the error denied him a fair trial).

Appellant also argued that he was entitled to postconviction relief on the ground that counsel was remiss in not requesting a jury instruction on accomplice liability. The exact basis on which appellant was alleging that Prine was an accomplice was unclear, but it appears to have been founded at least in part on the claim that Prine supplied him with the pills that resulted in his confused mental state, i.e., that Prine was as much to blame as appellant for appellant's commission of the offense.

Appellant did not make a showing of ineffective assistance of counsel. To prevail under Rule 37.1, the petitioner must offer facts to show that counsel's failure to request an instruction prejudiced the defense to the extent that petitioner was deprived of a fair trial. *Mathis v. State*, 2014 Ark. 148 (per curiam). When it is asserted that counsel was ineffective for failure to make a motion or argument, the petitioner must show that the motion or argument would have been meritorious because the failure to make an argument that is meritless is not ineffective assistance of counsel. *Id.* Here, appellant did not show that establishing that Prine was an accomplice to capital murder would impact the outcome of appellant's case. Appellant had the burden of demonstrating that there was a rational basis for the instruction, and he failed to do so. *Id.*; *Davis v. State*, 2011 Ark. 433 (per curiam).

If appellant intended the allegation to be that he would not have been as culpable if he had Prine as an accomplice, the law in Arkansas makes no distinction between the criminal liability of a principal and an accomplice. Ark. Code Ann. § 5-2-402(2) (Repl. 2006); *Winters v. State*, 2013 Ark. 193, 427 S.W.3d 597. We have held that under the accomplice-liability statute, a defendant may properly be found guilty not only of his own conduct but also the conduct of his accomplice. *Purifoy v. State*, 307 Ark. 482, 822 S.W.2d 374 (1991). When two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Davis v. State*, 2014 Ark. 17.

Finally, appellant alleged in his Rule 37.1 petition and the motion to amend the petition that his attorney failed to advise him of offers by the State to enter into a bargain whereby he would plead guilty and receive a more favorable sentence than the sentence of life without parole that was imposed. Appellant repeated the contention in two motions "to clarify," explaining that it was a deputy prosecuting attorney who made the offers. He appended to the motions his sister's affidavit stating that the prosecuting attorney told her after appellant's trial that "they had asked or talked to" appellant's attorney about the plea bargains and that counsel either walked away or said she could win and declined to talk further. In its response to the Rule 37.1 petition, the State averred that no plea offer was ever made in the case.[1]

Failure to communicate a plea agreement offer to a defendant has been held to be

---

[1] The court responded to the motion to clarify the Rule 37.1 petition in a file-marked letter order in which the court explained that the contents of the motions would not change the outcome of the Rule 37.1 proceeding because "the fact that your lawyer failed to discuss matters with the Deputy Prosecuting Attorney makes no difference" because the Prosecuting Attorney has indicated that no plea offer was ever proposed.

ineffective assistance of counsel when it is established by the petitioner that the plea was indeed offered. *See Elmore v. State*, 285 Ark. 42, 684 S.W.2d 263 (1985). We have held, however, that counsel cannot be found to have been ineffective for failure to communicate a plea offer based solely on the bare assertion of a petitioner that the plea was offered without any factual substantiation that the offer was made. *Huddleston v. State*, 347 Ark. 226, 61 S.W.3d 163 (2001) (per curiam). Otherwise, even where there had been no plea negotiations, a petitioner could open a judgment of conviction to collateral attack based on his mere contention that there was a plea offer, and a collateral attack on a valid judgment must be founded on more than an unsubstantiated allegation if the presumption that a criminal judgment is final is to have any meaning. *Id.* Here, in addition to appellant's sister's statement, the record contains the affidavit, appended to the State's response, of Andy Riner, Prosecuting Attorney. The affidavit avers the following:

> I, Andy Riner, affirm that no plea offers were made to Defense Counsel. The only discussion of a plea was initiated by Attorney Randy Rainwater who asked your Affiant for a plea to manslaughter and credit for time served, which was rejected by the State. Further, Chief Deputy Prosecuting Attorney, Jim Henderson asked counsel for Defendant, Andy [sic] Davis, if Leach were interested in a plea offer and received no response.

The affidavit contradicts appellant's claim that there was a plea offer that was not communicated to him.

Appeal dismissed; motions moot.

DANIELSON and HART, JJ., dissent.

**PAUL E. DANIELSON, Justice, dissenting.** The failure to communicate a plea-agreement offer to a defendant has been held to constitute ineffective assistance of counsel.

8

*See Riggins v. State*, 329 Ark. 171, 946 S.W.2d 691 (1997). This is because "counsel has the duty to advise his client of an offer of a negotiated plea." *Elmore v. State*, 285 Ark. 42, 44, 684 S.W.2d 263, 264 (1985) (per curiam). Although no plea had yet been offered to Leach, the affidavits submitted by Leach present that the State did ask Leach's trial counsel if he was interested in a plea offer, and Leach has asserted that his trial counsel failed to convey the State's inquiry to him.

We have held that a plea agreement is an agreement between the accused and the prosecutor, not an agreement between counsel and the prosecutor. *See id.* To that end, it seems only fair that trial counsel had a duty to pass along any inquiry to Leach, such that he could decide his interest in a plea bargain. If the failure to communicate a plea offer constitutes ineffective counsel, it certainly stands to reason that the failure to communicate the State's inquiry as to Leach's amenability to a plea offer could also equate to ineffective assistance.[1] At the very least, Leach has presented a question that I believe warrants a hearing to develop the facts further. Accordingly, I respectfully dissent.

HART, J., joins.

---

[1]I am cognizant of our line of cases wherein we have regrettably used the language that "[t]he decision on whether to enter into plea negotiations is a matter of strategy beyond the purview of post-conviction relief." *See, e.g.*, *Jones v. State*, 308 Ark. 555, 559, 826 S.W.2d 233, 235 (1992). However, that language is derived from our decision in *Lomax v. State*, 285 Ark. 440, 688 S.W.2d 283 (1985) (per curiam), wherein we held that "urging an accused to accept a negotiated plea" is a matter of strategy and outside the purview of Rule 37. 285 Ark. at 441, 688 S.W.2d at 284–85. Those cases are simply inapposite to the facts presented in the instant case.